UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAQIB KAFEEL,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC., et al.,<br><br>    Defendants. | Case No.  26-cv-00330-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; AND SCREENING CASE PURSUANT TO 28 U.S.C. § 1915**<br><br>Re: Dkt. Nos. 32, 42, 44 |

After his Apple Books publishing accounts were terminated, Saqib Kafeel filed this lawsuit against Apple Inc. and three related entities.  Kafeel, proceeding without the benefit of counsel, asserts six claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) conversion and trespass to chattels; (4) monopolization in violation of the Sherman Act, 15 U.S.C. § 2; (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (6) intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").  Apple, the only defendant currently appearing, moves to dismiss.  For the reasons stated below, Apple's motion is **GRANTED IN PART** and **DENIED IN PART**.[1]  Additionally, the other defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2).  Dismissal is with leave to amend.

***Breach of Contract.***  Kafeel plausibly alleges a claim for breach of contract.  He alleges that Defendants terminated the eBook Agency/Commissionaire Distribution Agreement that they

---

[1] Kafeel has not sufficiently identified a need for a surreply, so his motion for leave to file a surreply is denied.  Consequently, Apple's motion to strike that motion is denied as moot.  Even if considered, Kafeel's proposed surreply would not change the outcome of this order.

had entered into with Kafeel "without prior warning."  (Dkt. No. 1 ("Compl.") ¶ 29.)  He alleges that this constituted a breach of contract because, among other things, Defendants "[f]ail[ed] to provide any contractually required notice."  (*Id.* ¶ 44.)  Liberally construed, that sufficiently explains how Defendants allegedly breached the contract.  (*See id.*; *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).  Although the complaint does not correctly cite the specific provision, the contract does indeed contain a provision that appears to require a thirty-day notice prior to termination, and it is not difficult to find.  (Dkt. No. 29-2 ("Agreement") ¶¶ 1(q), 13(a).) Additionally, it is reasonable to infer that Kafeel's 3,400 eBooks would have generated *some* income within thirty days of termination, so it is plausible that breach of the notice provision caused him damage.  (*See* Compl. ¶¶ 21–22, 36–37.)

Otherwise, Kafeel's theories of breach are not plausibly alleged.  He allegedly executed the Agreement in 2023.  (*Id.* ¶ 19.)  And after one year, either party can terminate the Agreement "for any or no reason."  (Agreement ¶ 1(q).)  Thus, it is not plausible that Defendants needed cause to terminate the Agreement in 2025.  (*See* Compl. at 11.)[2]  Similarly, the Agreement requires Apple to "promptly destroy[]" most "Publisher Materials" after its termination, so it is not plausible that Defendants were contractually obligated to return Kafeel's eBooks to him. (*See* Agreement ¶ 13(c).)  And there are no sections of the Agreement numbered 7.5 or 10.3. (*See id.* at 11; Compl. ¶ 44.)  But Kafeel plausibly alleges at least one theory of breach, and that is sufficient to state a claim.

***Implied Covenant of Good Faith and Fair Dealing.***  Under California law, the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349–50 (2000).  In addition, claims for breach of the implied covenant "'may be disregarded as superfluous' if the allegations 'do not go beyond the statement of a mere contract breach.'"  *Nor-Cal Moving Servs. v. Paylocity Corp.*, No. 25-CV-02085-RFL,

---

[2] All citations to page numbers in filings on the docket refer to ECF pagination.

2025 WL 2076620, at *1 (N.D. Cal. July 23, 2025) (citation omitted).

Kafeel has not stated a claim for breach of the implied covenant. To the extent this claim is premised on Apple's failure to give sufficient notice before terminating the Agreement, it is superfluous to the breach of contract claim. *See id.* And to the extent this claim is premised on Apple's choice to terminate the Agreement, that choice was expressly permitted by the Agreement, so it cannot violate the implied covenant. (*See* Agreement ¶ 1(q); *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992).)

***Conversion and Tresspass to Chattels.*** Claims for conversion and trespass to chattels require an ownership or possessory interest in the personal property at issue. *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990) (citation omitted); *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1400–01 (2009). Kafeel has not plausibly alleged such an interest. After termination, the Agreement required Apple to "promptly destroy[]" any "Publisher Materials in Apple's possession or control" except for copies "necessary for Apple's standard customer support practices" or required to be maintained by law. (Agreement ¶ 13(c).) An individual has no interest in property that they turn over for eventual destruction. *See Ananda Church of Self-Realization v. Mass. Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1282–83 (2002). And the Agreement seems to contemplate only Apple's possession of any retained copies. Kafeel's opposition brief does not meaningfully address how he retained an interest in these copies despite the Agreement's termination provision.

***Monopolization.*** Kafeel fails to state a claim for monopolization under the Sherman Act. Such a claim requires alleging willful acquisition or maintenance of monopoly power in the relevant market. *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022). Kafeel defines the relevant market as "the proprietary ecosystem for the distribution and sale of e-books, specifically commercially formatted public domain derivatives, to users of Apple's operating systems and devices (iOS/macOS)." (Compl. ¶ 57.) Typically, "a manufacturer's own products do not themselves comprise a relevant product market." *Apple Inc v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) (citation omitted). Single-brand aftermarkets are

3

an exception to that rule. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 976 (9th Cir. 2023). But the Complaint does not allege the required elements for a single-brand aftermarket, including aftermarket restrictions that are "'not generally known' when consumers make their foremarket purchase." (*See id.* at 977; Compl. ¶¶ 57–63.) Accordingly, the Complaint does not plausibly allege a relevant market. Additionally, Kafeel has not plausibly alleged anticompetitive conduct. It is insufficient to allege merely that termination of one person's accounts "signal[ed] to other Publishers that their investment in proprietary content can be summarily seized." (*See* Compl. ¶ 59; *Coronavirus Rep. v. Apple Inc.*, No. 21-CV-05567-EMC, 2021 WL 5936910, at *15 (N.D. Cal. Nov. 30, 2021) (dismissing antitrust claims where plaintiffs "failed to make any allegation th[at] Apple benefits from its rejection of apps or from suppression of apps in the search function").)

*UCL.* The UCL prohibits "unlawful, unfair or fraudulent" acts, with each of the three prongs providing a different theory of liability. Cal. Bus. & Prof. Code § 17200. Kafeel does not plausibly allege a claim under any prong. He has only plausibly alleged a claim for breach of contract, and that alone is insufficient to state an unlawful prong claim. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). As to the unfair and fraudulent prongs, Kafeel simply repackages Apple's alleged breach of contract. (*See* Compl. ¶¶ 67–68 (alleging Apple forced Kafeel to "forfeit his entire commercial investment . . . without meaningful recourse" and solicited eBook uploads "knowing that it retains the unilateral power to seize the assets and lock the account without explanation").) Without more, such as factual allegations permitting a plausible inference that Apple intentionally and systemically breaches its contracts, those allegations are insufficient to state unfair or fraudulent prong claims. *See Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008); *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 489–90 (2010).

***Intentional Infliction of Emotional Distress.*** A claim for IIED requires outrageous conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Unterberger v. Red Bull N. Am., Inc.*, 162 Cal. App. 4th 414, 423 (2008) (citation omitted).

"[T]he termination of a business relationship, is, as [a] matter of law, not the type of 'outrageous' conduct" needed to support a claim for IIED. *Id.* That is what Kafeel alleges, so he has not stated a claim for IIED. *See id.*; *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 780–81 (2013) (reneging on promise to pay large bonus not sufficiently outrageous).

  ***Negligent Infliction of Emotional Distress.*** Under California law, a claim for NIED is really a claim for negligence. *Yaffe v. JP Morgan Chase Bank N.A.*, No. 24-CV-01357-RFL, 2024 WL 5063820, at *2 (N.D. Cal. Dec. 11, 2024) (citations omitted). In this context, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993). "In the typical contract case, it is not foreseeable that breach will cause emotional distress." *Saari v. Jongordon Corp.*, 5 Cal. App. 4th 797, 803 (1992). Kafeel does not plausibly allege that the Agreement "so affect[ed] the vital concerns of the contracting parties that severe emotional distress is a foreseeable result of a breach." *See id.* (considering crematorium contract). Nor does he plausibly allege that Apple breached any legal duty independent of the Agreement.

  ***Jurisdiction.*** With the federal law claim dismissed, Apple contends that there is no subject-matter jurisdiction over Kafeel's remaining claims. Those claims arise under state law, so diversity jurisdiction is the only potential source of original jurisdiction. Apple does not dispute that the parties are completely diverse. Instead, it contends that Kafeel cannot recover more than $75,000 for his remaining claims. When a plaintiff files suit in federal court alleging damages above $75,000, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)), *abrogated in irrelevant part*. As a result, it must "appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury*, 303 U.S. at 289. "Generally speaking, the legal certainty test makes it very difficult to secure a dismissal of a case . . . ." *Pachinger v. MGM Grand Hotel-L.V., Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (citation omitted).

Apple has not met its heavy burden to justify dismissal.  Its argument is largely premised on evidence showing Kafeel earned $952.51 from eBook sales between September 2023 and July 2025.  (*See* Dkt. No. 32-3.)  But, without more, that lackluster income does not make it legally certain that the fair market value of his 3,400 eBooks, which incorporates the value of future sales and which is the amount at issue in the conversion claim, is below $75,000.[3]  *See Pachinger*, 802 F.2d at 364; *Lint v. Chisholm*, 121 Cal. App. 3d 615, 624 (1981) (citing Cal. Civ. Code § 3336).

***Screening Claims Against Other Defendants.***  In addition to Apple, Kafeel has named three related entities as defendants: Apple Distribution International, Apple Operations International, and Apple Services Entities Acting as Agent or Commissionaire.  All three are allegedly "affiliated entities designated by Apple to act as the Publisher's agent or commissionaire for the sale of e-books in specific territories, as defined in the Agreement." (Compl. ¶ 17.)  But the first is only named in a separate Apple Developer Program License Agreement, not the eBook Agency/Commissionaire Distribution Agreement.  (*See id.* at 15.) The Complaint never explains the significance of the Developer Program License Agreement, and none of Kafeel's claims are based on it.  The other two defendants are not named in either agreement, though one appears to be an attempt to conglomerate four entities that the eBook Agreement appoints as Apple's agents or commissionaire.  (*See* Agreement at 18.)  As the related entity Defendants either do not appear relevant to Kafeel's claims or do not appear to exist, they are dismissed pursuant to 28 U.S.C. § 1915(e)(2).

***Conclusion.***  Apple's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Kafeel's breach of the implied covenant of good faith and fair dealing, conversion,

---

[3] The Ninth Circuit has not decided whether dismissed claims are included when determining the amount in controversy. *Thomas v. State Farm Gen. Ins. Co.*, No. 20-CV-10967-GW, 2022 WL 19569294, at *2 (C.D. Cal. Feb. 10, 2022).  While there is a circuit split on the issue, considering dismissed claims is "arguably a majority rule." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).  The logic behind the majority rule is persuasive, as post-filing developments reducing the amount in controversy generally do not destroy diversity jurisdiction. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 38 n. 8 (2025).

trespass to chattels, monopolization, UCL, IIED, and NIED claims are **DISMISSED**. Additionally, the claims against Apple Distribution International, Apple Operations International, and Apple Services Entities Acting as Agent or Commissionaire are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2).  Because amendment does not necessarily appear futile, dismissal is with **LEAVE TO AMEND**.  Kafeel's breach of contract claim against Apple Inc. survives dismissal.

If Kafeel wishes to file an amended complaint correcting the deficiencies identified above, he may do so by **July 2, 2026**.  Because an amended complaint completely replaces the previous complaints, Kafeel must include in any amended complaint all the claims he wishes to present (including his breach of contract claim) and all the defendants he wishes to sue.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  The amended complaint may not add new claims, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  Additionally, any amended complaint must attach documents as exhibits, rather than including links to file-sharing services.  If no amended complaint is filed by that date, the claims dismissed in this order will remain dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: June 11, 2026

RITA F. LIN
United States District Judge