**TABLE OF CONTENTS**

I.   INTRODUCTION AND NATURE OF THE ACTION ........................................................ 1

II.  JURISDICTION AND VENUE ....................................................................................... 2
     A. Legal Sufficiency and Diversity Standards ............................................................ 2
     B. Supreme Court Jurisprudence on Notice Pleading and Dismissals ........................ 3

III. PARTIES ......................................................................................................................... 4
     A. Plaintiff Identity and Status ................................................................................... 4
     B. Defendant Identity and Operational Control Architecture ..................................... 4
     C. Supreme Court Principles on Single Enterprise and Parent Liability ..................... 4

IV.  ALLEGATIONS APPLICABLE TO ALL CLAIMS ...................................................... 5
     A. The "Vintage Gems" Collection and the $15 Million Asset Valuation ................... 5
     B. Constitutional Protections and Jurisprudence Governing Intangible Property …………….......... 6
     C. Breach of the DPLA and Integrated Accounts ....................................................... 8
     D. United States Supreme Court Authority on Unified Transactions and Goodwill ............... 9
     E. Destruction of SEO Infrastructure and Digital Visibility Channels ..................... 10
     F. Controlling Precedent on Unfair Methods of Competition and Free Market Barriers …………...... 11

V.   CAUSES OF ACTION ................................................................................................... 12
     FIRST CAUSE OF ACTION: Breach of Contract (Condition Precedent) ........................... 12
     SECOND CAUSE OF ACTION: Conversion and Trespass to Chattels .............................. 14
     THIRD CAUSE OF ACTION: Violation of California's Unfair Competition Law (UCL) ................. 15
     FOURTH CAUSE OF ACTION: Intentional Infliction of Emotional Distress (IIED) ....................... 18

VI.  MOTION FOR SANCTIONS & ADDITIONAL EXTRA-JUDICIAL CONDUCT ........................ 20
     A. Mid-Litigation Suppression of Apple Music Artist Channel ............................... 20
     B. Inherent Authority of Federal Courts to Address Bad-Faith Interference ........................ 21

VII. REQUEST FOR LEAVE TO AMEND AND IMMEDIATE DISCOVERY .................................... 23

VIII. PROPORTIONALITY OF COMPLAINT LENGTH AND STATUTORY PLEADING
COMPLIANCE ....................................................................................................................... 23

IX.  PLAINTIFF'S REPEATED ATTEMPTS TO RESOLVE MATTER EXTRA-JUDICIALLY............ 26

X.   PRAYER FOR RELIEF ................................................................................................... 29

XI.  DEMAND FOR JURY TRIAL ........................................................................................ 31

XII. LIST OF ATTACHED EXHIBITS .................................................................................... 31

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO DIVISION**

SAQIB KAFEEL,
**Plaintiff**,

v.

APPLE INC.,
**Defendant**.

**Case No.** 3:26-cv-00330-RFL
**Judge:** The Honorable Rita F. Lin

**FIRST AMENDED COMPLAINT FOR:**
1. BREACH OF CONTRACT (EBOOK AGREEMENT & INTEGRATED DPLA)
2. CONVERSION & TRESPASS TO CHATTELS
3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (UCL)
4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
5. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

**[DEMAND FOR JURY TRIAL]**

## I. INTRODUCTION AND NATURE OF THE ACTION

Plaintiff Saqib Kafeel ("Plaintiff"), proceeding pro se, submits this First Amended Complaint ("FAC") against Defendant Apple Inc. ("Apple") pursuant to this Court's leave to amend. This FAC supersedes the original complaint and establishes an airtight factual matrix detailing Apple's systemic, multi-platform destruction of Plaintiff's independent digital publishing, software engineering, and musical infrastructure.

Rather than providing a standard commercial transition, Apple executed a sweeping "Digital Execution"—a multi-platform, extra-contractual lockout that simultaneously suppressed a vintage collection of over 3,400+ assets "Vintage Gems", dismantled an independent software developer ecosystem, and severed active musical distribution channels.

1

Plaintiff seeks total damages of **$45,000,000**, justified by the following itemized economic and tortious injuries:

**$15,000,000** for the asset and goodwill loss of the 3,400+ assets "Vintage Gems" collection;

**$5,000,000** for Breach of the DPLA and Integrated Accounts, representing the loss of valued international clients and professional embarrassment;

**$5,000,000** for Destruction of SEO Infrastructure and associated digital marketing labor;

**$5,000,000** for the retaliatory Apple Music artist account lockout;

**$5,000,000** for Intentional Infliction of Emotional Distress (IIED); and

**$10,000,000** in compensatory and punitive adjustments for Apple's bad-faith algorithmic suppression and violation of the covenant of good faith and fair dealing.

Plaintiff moves this Court to order immediate, limited discovery to prevent ongoing platform-side spoliation and to ensure a speedy trial, requesting that the Court preclude any further dilatory motions to dismiss.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to **28 U.S.C. § 1332(a)(2)(Source)** as complete diversity of citizenship exists and the amount in controversy exceeds $75,000. Under Ninth Circuit precedent in **Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970 (9th Cir. 2010)(Source)**, the complexity of these damage calculations is a factual matter that cannot be dismissed at the pleading stage.

Personal jurisdiction and venue are proper in this judicial district pursuant to **28 U.S.C. § 1391(b)(Source)** because Defendant Apple Inc. is headquartered in Cupertino, California, and the coordinated bans at issue were deployed from this district.

To ensure this case proceeds rapidly to adjudication on the merits and to preclude defense efforts to delay through a groundless motion to dismiss, Plaintiff shows that under established Supreme Court authority, well-pleaded factual claims regarding established contract breaches and clear economic injuries must bypass preliminary dismissal hurdles. The following exact, verbatim quotations from the United States Supreme Court are directly searchable within the official record and confirm that jurisdiction, venue, and the operational sufficiency of Plaintiff's claims are completely unassailable:

2

- **1) Mt. Healthy City School District Board of Education v. Doyle**, 429 U.S. 274 (1977): The Supreme Court re-verified the foundational rule that the valuation of damages asserted by a plaintiff governs diversity jurisdiction unless it is an absolute mathematical impossibility, stating verbatim: *"[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."*
  Source Link: https://supreme.justia.com/cases/federal/us/429/274/

- **2) Hertz Corp. v. Friend**, 559 U.S. 77 (2010): The Supreme Court held that corporate citizenship and operational accountability are centered directly where corporate leaders command policy and execute platform decisions, stating verbatim: *"the place where a corporation's officers direct, control, and coordinate the corporation's activities"*
  Source Link: https://supreme.justia.com/cases/federal/us/559/77/

- **3) Bell Atlantic Corp. v. Twombly**, 550 U.S. 544 (2007): The Supreme Court firmly barred defense efforts to use a motion to dismiss to escape discovery on the ground that the claims appear difficult to prove at the initial filing, stating verbatim: *"a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable"*
  Source Link: https://supreme.justia.com/cases/federal/us/550/544/

- **4) Erickson v. Pardus**, 551 U.S. 89 (2007): The Supreme Court declared that standard complaints do not require exhaustive technical or evidentiary histories to survive initial pleading phases, stating verbatim: *"Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"*
  Source Link: https://supreme.justia.com/cases/federal/us/551/89/

- **5) Swierkiewicz v. Sorema N.A.**, 534 U.S. 506 (2002): The Supreme Court established that the pleading stage is not meant to contain a full litigation of the facts, which instead must be unraveled through discovery, stating verbatim: *"This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."*
  Source Link: https://supreme.justia.com/cases/federal/us/534/506/

- **6) Neitzke v. Williams**, 490 U.S. 319 (1989): The Supreme Court ruled that a motion to dismiss cannot be granted simply because a court is skeptical about the plaintiff's ultimate capacity to win the case, stating verbatim: "Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."
  Source Link: https://supreme.justia.com/cases/federal/us/490/319/

- **7) Scheuer v. Rhodes**, 416 U.S. 232 (1974): The Supreme Court commanded that when examining a complaint at the threshold stage, courts must review allegations favorably toward the claimant rather than finding excuses to dismiss, stating verbatim: "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."
  Source Link: https://supreme.justia.com/cases/federal/us/416/232/

## III. PARTIES

Plaintiff Saqib Kafeel is an independent digital publisher, author, software infrastructure designer, and verified musical artist residing in Pakistan.

Defendant Apple Inc. is a California corporation with its principal place of business at One Apple Park Way, Cupertino, California. Apple Inc. maintains exclusive control over the global Apple Books marketplace, the Apple ID verification infrastructure, the Apple Music ecosystem, and the unified rules governing developer and publisher distribution portals worldwide.

**Note on Corporate Entities:** Plaintiff previously named Apple Distribution International and Apple Operations International. However, as Apple Inc. maintains centralized control over the unified Apple ID system, the algorithms, and the legal policies governing these international subsidiaries, Plaintiff asserts that Apple Inc. is the primary liable party. Plaintiff explicitly establishes a clear operational record where Defendant cannot deflect liability onto their subsidiaries, as all enforcement actions were tied to a single, unified Apple ID system managed out of Cupertino.

To preclude any pleading-stage attempts by defense counsel to shift blame, split liability, or dilute accountability onto international subsidiaries, Plaintiff relies upon binding Supreme Court authority establishing that a parent corporation exercising total centralized command, uniform operational systems, and pervasive directional control over its corporate network is directly liable for the resulting commercial outcomes and cannot hide behind subsidiary formations. The following exact, verbatim quotations are directly searchable within the official record:

4

- **1) Copperweld Corp. v. Independence Tube Corp.**, 467 U.S. 752 (1984): The Supreme Court recognized that a parent company and its corporate subsidiaries act as a single, coordinated enterprise when directed by a centralized consciousness, stating verbatim: "A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one."
  Source Link: https://supreme.justia.com/cases/federal/us/467/752/

- **2) United States v. Bestfoods**, 524 U.S. 51 (1998): The Supreme Court affirmed that a parent organization faces direct accountability when it actively controls and steers the specific operational mechanisms at issue, stating verbatim: "the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes"
  Source Link: https://supreme.justia.com/cases/federal/us/524/51/

- **3) First National City Bank v. Banco Para el Comercio Exterior de Cuba**, 462 U.S. 611 (1983): The Supreme Court ruled that separate corporate identities must be set aside when an overarching entity exerts absolute dominion to achieve a singular outcome, stating verbatim: "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created, we have held that one may be held liable for the actions of the other."
  Source Link: https://supreme.justia.com/cases/federal/us/462/611/

## IV. ALLEGATIONS APPLICABLE TO ALL CLAIMS

### A. The "Vintage Gems" Collection and the $15 Million Asset Valuation

Plaintiff is the sole creator and developer of a vintage collection of over 3,400+ assets "Vintage Gems" derived from thousands of rare historical books spanning the 1500s to the 1900s. Plaintiff performed exhaustive technical labor, "polishing," formatting, and converting these 3,400+ assets "Vintage Gems" into modern, high-fidelity EPUB 3 technology specifically optimized for display and distribution across Apple hardware ecosystems.

5

THE $15 MILLION VALUATION (The "Vintage Gems" Argument): Apple's attempt to devalue Plaintiff's work based on past royalty streams is a fundamental misapplication of property law. Just as a painter—not a corporate lawyer—rightfully determines the value and respect commanded by their own art and collection, the Plaintiff is the sole arbiter of the intrinsic and market potential of his proprietary digital catalog. Apple mocks the $15 million valuation by citing modest past earnings, yet under **Cal. Civ. Code § 3336([Source](#))**, the measure of damages for conversion is the value of the property at the time of the wrongful act, not its historical income.

As established in the rare book industry, the underlying intellectual value of historical titles is immense: a first edition of *Ulysses* (1922) can reach £100,000; *The Hound of the Baskervilles* (1902) can fetch £80,000; and *Pride and Prejudice* can command over £20,000 (Source: *[Hemswell Antiques](#)*; *[Astaguru](#)*). The Supreme Court held in ***Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015)([Source](#))** that property rights are distinct from the royalties they generate. Apple's "Digital Execution" destroyed a lifetime of intellectual infrastructure. When 3,400+ assets "Vintage Gems"—each carrying the prestige of historical literature—are evaluated for replacement cost and professional valuation, the total exceeds the $15 million threshold. To a trillion-dollar entity, this is a minor dispute, but to the creator, it represents the total loss of a unique and irreproducible professional life's work.

To reinforce the absolute separation between independent asset valuation and historical streaming or royalty metrics, and to solidify the protected constitutional status of intangible assets, Plaintiff relies upon the following binding jurisprudence of the Supreme Court of the United States, utilizing exact, verbatim text searchable within the official record:

- **1) Ruckelshaus v. Monsanto Co.**, 467 U.S. 986 (1984): The Supreme Court explicitly recognized that intangible property interests are fully deserving of protection under the law, stating verbatim: ″That intangible property rights protected by state law are deserving of the protection of the Taking Clause has long been implicit in the thinking of this Court″
  Source Link: https://supreme.justia.com/cases/federal/us/467/986/
- **2) College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.**, 527 U.S. 666 (1999): The Supreme Court defined the core characteristic of a true property right as the right to exclude, stating verbatim: ″The hallmark of a protected property interest is the right to exclude

others. That is "one of the most essential sticks in the bundle of rights that are commonly characterized as property."″

Source Link: https://supreme.justia.com/cases/federal/us/527/666/

- **3) Horne v. Department of Agriculture**, 576 U.S. 351 (2015): The Supreme Court forcefully rejected any legal theory that personal or commercial property receives less protection or inferior valuation standards than real property, stating verbatim: ″The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home.″
  Source Link: https://supreme.justia.com/cases/federal/us/576/351/

- **4) United States v. General Motors Corp.**, 323 U.S. 373 (1945): The Supreme Court ruled that constitutional property protection denotes the entire bundle of operational rights rather than just a physical object, stating verbatim: ″it may have been employed Page 323 U. S. 378 in a more accurate sense to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it.″
  Source Link: https://supreme.justia.com/cases/federal/us/323/373/

- **5) United States v. 50 Acres of Land**, 469 U.S. 24 (1984): The Supreme Court affirmed that deviation from ordinary transactional metrics is necessary when market data fails to prevent structural injustice, stating verbatim: ″Deviation from this measure of just compensation has been required only "when market value has been too difficult to find, or when its application would result in manifest injustice to owner or public."″
  Source Link: https://supreme.justia.com/cases/federal/us/469/24/

- **6) Monongahela Navigation Co. v. United States**, 148 U.S. 312 (1893): The Supreme Court firmly established that a property owner is entitled to full constitutional protection and compensation under the Fifth Amendment for both the tangible assets and the underlying commercial rights/franchises taken, stating verbatim in the official syllabus text: ″that company is entitled under the provisions of the Fifth Amendment to the Constitution, to recover compensation from the United States for the taking of the franchise to exact tolls, as well as for the value of the tangible property taken.″
  Source Link: https://supreme.justia.com/cases/federal/us/148/312/

**B. Breach of the DPLA and Integrated Accounts**

Apple's contention that the Apple Developer Program License Agreement (DPLA) is irrelevant to this dispute is a factual and logical fallacy that ignores the "total strike" nature of their "Digital Execution." While Apple's counsel attempts to isolate the eBook accounts, they fail to explain why the lockout simultaneously terminated Plaintiff's access to the Developer ID used for managing app infrastructure for multiple international clients.

By disabling the root Apple ID, Apple triggered a cross-platform breach of the DPLA, an agreement Apple attached to its own Motion (Dkt. 32). Under California law, when multiple agreements involve the same parties and subject matter, they must be construed together as one transaction.

**Cal. Civ. Code § 1642([Source](#))**. As established in **Harm v. Frasher, 181 Cal. App. 2d 405 (1960)([Source](#))**, the breach of one part of an integrated commercial relationship constitutes a breach of the whole. Apple's centralized lockout weaponized the DPLA to cripple Plaintiff's professional standing beyond the eBook store, proving that their conduct was not a "discretionary termination," but an unauthorized and overbroad seizure of digital property.

Furthermore, Apple locked **Apple IDs / Developer Portals associated with** those Gmail address emails: saqib.kafeel25@gmail.com, saqib.kafeel23@gmail.com, and saqib.kafeel28@gmail.com. These emails were the keys to professional ecosystems where Plaintiff spent a decade establishing goodwill, managing developer account admin access for international clients, and releasing application updates. The email saqib.kafeel23@gmail.com in particular is a decade old and served as a central hub for multiple developer accounts. All associations with these emails were locked or permanently deleted, the full scope of which must be determined in the upcoming discovery.

To establish that an integrated commercial relationship cannot be selectively severed to destroy a business ecosystem, and to prove that the destruction of interlinked digital infrastructure and long-standing professional goodwill constitutes an actionable legal injury, Plaintiff relies upon the binding jurisprudence of the Supreme Court of the United States. The following exact, verbatim quotations are directly searchable within the official record:

8

- **1) South Branch Lumber Co. v. Ott**, 142 U.S. 622 (1892): The Supreme Court recognized that multiple legal instruments executed concurrently must be treated as a single, unified transaction, stating verbatim: *"several instruments executed by a debtor at about the same time may be considered as parts of one transaction, and as in law forming but one instrument"*
  Source Link: https://supreme.justia.com/cases/federal/us/142/622/

- **2) Anvil Mining Co. v. Humble**, 153 U.S. 540 (1894): The Supreme Court affirmed that a fundamental breach of one core component of an agreement entitles the injured party to treat the entire commercial relationship as broken, stating verbatim: *"Whenever one party to a contract is guilty of such a breach as is here attributed to the defendant, the other party may treat the contract as broken and may abandon it"*
  Source Link: https://supreme.justia.com/cases/federal/us/153/540/

- **3) Adams Express Co. v. Ohio State Auditor**, 166 U.S. 185 (1897): The Supreme Court ruled that when independent business units are joined together in a single operational system, they develop an inseparable corporate value that cannot be destroyed piecemeal, stating verbatim: *"Whenever separate articles of tangible property are joined together not simply by a unity of ownership, but in a unity of use, there is not unfrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property."*
  Source Link: https://supreme.justia.com/cases/federal/us/166/185/

- **4) Pierce v. Society of Sisters**, 268 U.S. 510 (1925): The Supreme Court recognized that long-term business relationships, commercial contracts, and accumulated goodwill are highly valuable assets protected from arbitrary structural destruction, stating verbatim: *"The business and incident good will are very valuable. In order to conduct its affairs, long time contracts must be made for supplies, equipment, teachers and pupils."*
  Source Link: https://supreme.justia.com/cases/federal/us/268/510/

- **5) Old Dearborn Co. v. Seagram-Distillers Corp.**, 299 U.S. 183 (1936): The Supreme Court explicitly distinguished the physical components of a transaction from the underlying business goodwill, confirming that goodwill remains an independent, protected property interest belonging to

9

the creator, stating verbatim: *"separating the physical property, which he owns, from the goodwill, which is the property of another"*

Source Link: https://supreme.justia.com/cases/federal/us/299/183/

- **6) Oregon Steam Navigation Company v. Winsor**, 87 U.S. 64 (1873): The Supreme Court affirmed that modern commercial activities and business operations require an expansive, integrated legal view rather than an isolated narrow assessment, stating verbatim: *"This country is substantially one country, especially in all matters of trade and business, and it is manifest that case may arise in which it would involve too narrow a view of the subject to condemn as invalid a contract not to carry on a particular business within a particular state."*

  Source Link: https://supreme.justia.com/cases/federal/us/87/64/

## C. Destruction of SEO Infrastructure

Apple's "Digital Execution" was not merely a contract termination; it was a surgical strike against Plaintiff's digital presence and Search Engine Optimization (SEO) infrastructure. Prior to the lockout, Plaintiff's multi-year intensive SEO efforts had successfully indexed thousands of unique links on major search engines, specifically Google. A search for "Saqib Kafeel," "Saqib Kafeel books," or "Saqib Kafeel Publisher" yielded pages of results directing high-intent consumer traffic directly to the Apple eBook Store.

By abruptly deleting these 3,400+ assets "Vintage Gems" and breaking every indexed URL, Apple did not just remove content—they effectively hijacked Plaintiff's digital marketing labor. This "Link-Breaking" redirected organic traffic away from Plaintiff's competitively priced titles toward Apple's own preferred sellers, allowing Apple to maintain a higher commission cut (30%) on more expensive alternative titles.

The Rollins Declaration serves as definitive proof that the SEO infrastructure was functioning properly, as the sales of the 3,400+ assets "Vintage Gems" were regularly increasing, as were the monthly payout amounts. Despite this upward trajectory, Apple's algorithm refused to promote the 3,400+ assets "Vintage Gems", choosing instead to promote the highest-priced book sellers of public domain content. This discrepancy strongly suggests either an internal directive to maximize commission cuts or the existence of a hidden, anti-competitive contract with high-priced vendors—matters that must be laid bare during discovery.

10

The Ninth Circuit has established that the destruction of digital visibility and the resulting loss of prospective economic advantage are actionable harms. In **Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997)(Source)**, the court recognized the inherent commercial value of being easily found on the internet via specific search terms. Furthermore, Apple's interference with Plaintiff's established search engine rankings satisfies the elements of Tortious Interference with Prospective Economic Advantage. As established in **Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003)(Source)**, a defendant is liable when they engage in "independently wrongful" acts—here, the breach of the 30-day notice requirement—that disrupt a plaintiff's economic relationship with a third-party market.

To satisfy the baseline valuation mechanics for the **$5,000,000** claim for the destruction of SEO infrastructure and associated digital marketing labor, and to demonstrate that corporate multi-platform diversion of trade and intentional interference with established market channels are recognized constitutional injuries, Plaintiff invokes the binding jurisprudence of the Supreme Court of the United States. The following exact, verbatim quotations are directly searchable within the official record:

- **1) International News Service v. Associated Press**, 248 U.S. 215 (1918): The Supreme Court recognized that the unauthorized appropriation and diversion of a competitor's harvest of labor constitutes actionable unfair competition, stating verbatim: "and that defendant, in appropriating it and selling it as its own, is endeavoring to reap where it has not sown, and by disposing of it to newspapers that are competitors of complainant's members, is appropriating to itself the harvest Page 248 U. S. 240

  of those who have sown"

  Source Link: https://supreme.justia.com/cases/federal/us/248/215/

- **2) Hanover Star Milling Co. v. Metcalf**, 240 U.S. 403 (1916): The Supreme Court established that trademark rights are part of a broader body of law designed to protect the overall goodwill and trading channels of a business, stating verbatim: "The common law of trademarks is but a part of the broader law of unfair competition." and confirming that the law protects *the property in the trade or business which is imperiled, and not the property in the mark which is the instrument by which the trade is caught.*

  Source Link: https://supreme.justia.com/cases/federal/us/240/403/

- **3) Federal Trade Commission v. Motion Picture Advertising Service Co.**, 344 U.S. 392 (1953): The Supreme Court ruled that unfair methods of competition encompass platform-level constraints that go beyond traditional common law violations, stating verbatim: "The "unfair methods of competition," which are condemned by § 5(a) of the Act, are not confined to those that were illegal at common law or that were condemned by the Sherman Act."
  Source Link: https://supreme.justia.com/cases/federal/us/344/392/

- **4) Standard Oil Co. of New Jersey v. United States**, 221 U.S. 1 (1911): The Supreme Court recognized that the law protects against entry barriers and artificial limitations placed upon free competitive market conditions, highlighting the historical harm as "the dread of enhancement of prices and of other wrongs which it was thought would flow from the undue limitation on competitive conditions"
  Source Link: https://supreme.justia.com/cases/federal/us/221/1/

- **5) Eastern States Retail Lumber Dealers' Ass'n v. United States**, 234 U.S. 600 (1914): The Supreme Court ruled that an enterprise cannot deploy systemic data reporting or tracking architectures to disrupt trade or suppress commercial competition, stating verbatim: *"seeks to obstruct the free course of interstate trade and commerce and to unduly suppress competition"*
  Source Link: https://supreme.justia.com/cases/federal/us/234/600/

## V. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**

**(Breach of Contract – Against Apple Inc.)**

The eBook Agreement and the integrated DPLA constitute binding commercial contracts. Under Section 1(q) and Section 13(a) of the eBook Agreement(**EXHIBIT A**), Apple was bound by a mandatory condition precedent requiring thirty (30) days' advanced written notice prior to account suspension or termination.

Apple systematically breached these integrated agreements on July 30 and July 31, 2025, by deploying an immediate summary lockout without notice, instantly destroying Plaintiff's ability to migrate his 3,400+ assets "Vintage Gems", fulfill pending distributions, or preserve software client arrays.

**Countering the "At-Will" and "Security" Defenses:** Apple may attempt to argue that the contract allowed termination "at-will" or that the lockout was necessary for "safety and security." Plaintiff preemptively **forecloses** Apple on these points: while the contract may permit termination for any reason, it explicitly conditions such termination on a 30-day notice period. Furthermore, the "safety and security" justification is a demonstrable pretext. Apple cannot claim that Plaintiff's accounts posed a security risk while simultaneously allowing thousands of other sellers to sell the exact same public domain books at inflated prices. If Apple argues that public domain content is a security risk, they would have to ban all sellers, including their preferred corporate partners. Their failure to do so proves that the lockout was a targeted, bad-faith breach.

The Covenant of Good Faith: Under California law, a party cannot use an "at-will" termination clause to destroy the fruits of the contract for the other party. See ***Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342 (1992)([Source](#))**. Apple's conduct violated the implied covenant of good faith and fair dealing by rendering Plaintiff's performance impossible through the six-month pre-termination freeze. Damages for this breach exceed $15,000,000 in direct assets and $10,000,000 in consequential business destruction.

To conclusively establish that express conditions precedent must be strictly enforced, that sequential commercial performance cannot be obstructed by one party, and that the recovery of both direct asset values ($15,000,000) and substantial consequential operational business destruction ($10,000,000) is standard contract jurisprudence, Plaintiff relies upon the binding authority of the Supreme Court of the United States. The following exact, verbatim quotations are directly searchable within the official record:

- **1) United States v. Behan**, 110 U.S. 338 (1884): The Supreme Court ruled that when a breach of contract cuts short a party's business operations, the injured party is legally entitled to recover both direct expenditures/asset values and the full measure of their lost prospective profits, stating verbatim: *"T*The *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby.*"* and confirming the recovery of both classes of harm: *outlays less the value of any material on hand, and the amount of his prospective profits* Source Link: [https://supreme.justia.com/cases/federal/us/110/338/](https://supreme.justia.com/cases/federal/us/110/338/)

- **2) Howard v. Stillwell & Bierce Manufacturing Co.**, 139 U.S. 199 (1891): The Supreme Court established that consequential business losses, including profits from lost commercial streams, are fully recoverable if they flow naturally from the breach and were expected as part of the operating business architecture, stating verbatim: "profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered."
  Source Link: https://supreme.justia.com/cases/federal/us/139/199/

### SECOND CAUSE OF ACTION

**(Conversion and Trespass to Chattels – Against Apple Inc.)**

Plaintiff owns and holds exclusive possessory rights to his proprietary digital master files, consisting of over 3,400+ assets "Vintage Gems" unique, hand-polished EPUB 3 derivative architectures, high-resolution vector covers, and custom structural layout file structures.

For a six-month period prior to and completely independent of any formal termination notice, Apple locked Plaintiff's master Apple ID and storage portals, exercising unlawful dominion over his personal digital property and rejecting his repeated administrative demands for access. This structural seizure occurred while the distribution contract was legally active, bypassing the post-termination destruction policies under **Section 13(c)(Exhibit A)** and causing an asset loss exceeding $15,000,000.

To conclusively establish that an unconsented withholding, blockage, or deprivation of a rightful owner's possessory control over their proprietary assets—independent of eventual title termination—constitutes an actionable common-law conversion or trespass, and to verify that complete asset valuation is the absolute legal remedy for such a wrongful exercise of dominion, Plaintiff relies upon the binding authority of the Supreme Court of the United States. The following exact, verbatim quotations are directly searchable within the official record:

- **1) United States v. General Motors Corp.**, 323 U.S. 373 (1945): The Supreme Court explicitly held that a temporary deprivation or interference with an owner's right to use, possess, and handle their proprietary assets constitutes a complete legal wrong, stating verbatim: "the group of rights

14

inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it.″ Source Link: https://supreme.justia.com/cases/federal/us/323/373/

- **2) United States v. Virginia Electric & Power Co.**, 365 U.S. 624 (1961): The Supreme Court confirmed that the value of an asset or a commercial right cut off by an outside entity is measured purely by what the owner has lost, stating verbatim: ″The guiding principle of just compensation is reimbursement to the owner for the property interest taken.
"He is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole, but is not entitled to more.".″
  Source Link: https://supreme.justia.com/cases/federal/us/365/624/

**THIRD CAUSE OF ACTION**

**(Violation of California's Unfair Competition Law – Cal. Bus. & Prof. Code § 17200)**

Apple has engaged in "unfair" and "fraudulent" business practices by structuring their platform ecosystems to systematically **exclude**, absorb, and wipe out independent publishers while maintaining a non-competitive, high-priced monopoly on public domain literary historical assets.

To prove these UCL charges with an airtight factual **framework**, Plaintiff highlights Apple's intentional practice of hiding low-cost independent competitors while actively promoting corporate sellers who charge exorbitant prices for the exact same public domain text. While Plaintiff offered his polished 3,400+ assets "Vintage Gems" at consumer-friendly rates of $0.99 and $1.99, Apple suppressed his catalog to protect and drive organic traffic to its preferred high-price distribution partners—allowing Apple to pocket a vastly inflated 30% commission cut.

The following ten (10) specific public domain titles, currently live on the Apple Book Store and verified below, demonstrate this anti-competitive practice (with corresponding screenshots attached directly as **Exhibit C**):

1. *Frankenstein* by Mary Shelley | Live Preferred Seller: Penguin Books Limited | Apple Store Price: $10.99 USD | Verification Link: https://books.apple.com/us/book/frankenstein/id374314236
2. *Dracula* by Bram Stoker | Live Preferred Seller: ABP INC SCB Distributors Inc. | Apple Store Price: $3.99 USD | Verification Link: https://books.apple.com/us/book/dracula/id565089223

15

3. *Pride and Prejudice* by Jane Austen | Live Preferred Seller: Baker Book House Company | Apple Store Price: $4.99 USD | Verification Link:

   https://books.apple.com/us/book/pride-and-prejudice/id435089627

4. *The Wonderful Wizard of Oz* by L. Frank Baum | Live Preferred Seller: OpenRoad Integrated Media, LLC | Apple Store Price: $5.99 USD | Verification Link:

   https://books.apple.com/us/book/the-wonderful-wizard-of-oz/id852897965

5. *Little Women* by Louisa May Alcott | Live Preferred Seller: READ BOOKS LTD | Apple Store Price: $9.99 USD | Verification Link: https://books.apple.com/us/book/little-women/id1483751301

6. *The Three Musketeers* by Alexandre Dumas | Live Preferred Seller: Simon & Schuster Digital Sales LLC | Apple Store Price: $13.99 USD | Verification Link:

   https://books.apple.com/us/book/the-three-musketeers/id1501302404

7. *Moby Dick* by Herman Melville | Live Preferred Seller: Simon & Schuster Digital Sales LLC | Apple Store Price: $19.99 USD | Verification Link:

   https://books.apple.com/us/book/moby-dick/id1501294493

8. *Emma* by Jane Austen | Live Preferred Seller: HARPERCOLLINS PUBLISHERS | Apple Store Price: $7.99 USD | Verification Link: https://books.apple.com/us/book/emma/id457620096

9. *The Metamorphosis* by Franz Kafka | Live Preferred Seller: Penguin Random House LLC | Apple Store Price: $12.99 USD | Verification Link:

   https://books.apple.com/us/book/the-metamorphosis/id622099870

10. *The Great Gatsby* by F. Scott Fitzgerald | Live Preferred Seller: Simon & Schuster Digital Sales LLC | Apple Store Price: $8.99 USD | Verification Link:

    https://books.apple.com/us/book/the-great-gatsby/id381724898

There are thousands of additional public domain titles published at these artificially inflated prices which Plaintiff made available to consumers at a fraction of the cost. Discovery is required to determine whether Apple maintains confidential, anti-competitive agreements with these preferred corporate publishers to purposefully block and eliminate transparent, low-cost marketplace competition.

To support the allocation of $10,000,000 in compensatory and punitive adjustments for Apple's bad-faith algorithmic suppression, and to conclusively verify that platform-driven market manipulation, the

16

suppression of lower-priced competitors, and the deployment of closed gatekeeper ecosystems to exclude transparent price competition violate established standards of trade and fair dealing, Plaintiff relies upon the binding authority of the Supreme Court of the United States. The following exact, verbatim quotations are directly searchable within the official record:

- **1) Eastman Kodak Co. v. Image Technical Services, Inc.**, 504 U.S. 451 (1992): The Supreme Court defined market and platform manipulation as an anti-competitive weapon when used to exclude lower-cost service alternatives, stating verbatim: ″market power as the power to force a purchaser to do something that he would not do in a competitive market″ and confirming that courts must reject theoretical platform defenses when confronted with real-world exclusionary practices. Source Link: https://supreme.justia.com/cases/federal/us/504/451/

- **2) Lorain Journal Co. v. United States**, 342 U.S. 143 (1951): The Supreme Court established that a business entity possessing bottleneck or gatekeeper dominance cannot use its structure to destroy or exclude independent competitors to maintain its market position, stating verbatim: ″A lone newspaper, already enjoying a substantial monopoly in its area, violates the "attempt to monopolize" clause of § 2 when it uses its monopoly to destroy threatened competition.″ Source Link: https://supreme.justia.com/cases/federal/us/342/143/

- **3) National Society of Professional Engineers v. United States**, 435 U.S. 679 (1978): The Supreme Court ruled that any organizational setup, canon, or internal structural standard that operates to prevent open price competition or block transparent consumer choices is unlawful on its face, stating verbatim: ″the proper inquiry is whether the challenged agreement is one that promotes, or one that suppresses, competition″ Source Link: https://supreme.justia.com/cases/federal/us/435/679/

- **4) Otter Tail Power Co. v. United States**, 410 U.S. 366 (1973): The Supreme Court ruled that a dominant platform or systemic utility violates federal standards when it utilizes its structural leverage or infrastructure solely to stifle competitor growth and maintain a non-competitive position, stating verbatim: ″solely to prevent the municipal systems from eroding its monopolistic position -- refused to sell at wholesale or to wheel″ Source Link: https://supreme.justia.com/cases/federal/us/410/366/

17

- **5) United States v. Grinnell Corp.**, 384 U.S. 563 (1966): The Supreme Court established that the willful acquisition or maintenance of monopoly power through methods distinguished from growth or development as a consequence of a superior product is actionable, stating verbatim: "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition
- Page 384 U. S. 571
- or maintenance of that power"
  Source Link: https://supreme.justia.com/cases/federal/us/384/563/

## FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress – IIED)

**Severe Emotional Distress:** Apple's "Digital Execution" caused debilitating distress exceeding "ordinary disappointment." This was not a mere business setback; it was the targeted destruction of an income stream meticulously built through sustained, multi-year SEO efforts to rank 3,400+ assets "Vintage Gems" within a highly competitive search engine market.

As Plaintiff's long-term technical optimizations began yielding increased payouts, Apple abruptly terminated the account—potentially to favor "Divided Commission" partners—forcing Plaintiff to abandon personal commitments, including marriage. Under California law, such interference with life stability constitutes Intentional Infliction of Emotional Distress. As established in *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 333 (9th Cir. 1995)(**Source**), the manner of a termination is "outrageous" when it involves total disregard for a party's vested professional and personal interests. Apple's conduct was a bad-faith ambush that weaponized economic power to cause persistent anxiety, satisfying the "outrageousness" requirement for judicial relief.

To satisfy the legal foundation for the **$5,000,000** claim for Intentional Infliction of Emotional Distress (IIED), and to prove that the intentional destruction of an individual's personal life stability, professional livelihood, and mental well-being through severe, bad-faith corporate overreach constitutes an actionable injury under federal and state frameworks, Plaintiff relies upon the binding jurisprudence of the Supreme Court of the United States. The following exact, verbatim quotations are directly searchable within the official record:

18

- **1) Farmer v. United Brotherhood of Carpenters & Joiners of America**, 430 U.S. 290 (1977): The Supreme Court explicitly recognized that states have a profound, overriding interest in protecting private individuals from severe psychological harms caused by outrageous commercial or organizational conduct, stating verbatim: *"concerns protection from emotional distress caused by outrageous conduct, rather than protection from physical"*
  Source Link: https://supreme.justia.com/cases/federal/us/430/290/

- **2) Carey v. Piphus**, 435 U.S. 247 (1978): The Supreme Court established that mental and emotional distress are fully cognizable and independent injuries under the law, and that difficulty in quantification does not bar their legal vindication, stating verbatim: *"although such distress is compensable, neither the likelihood of such injury nor the difficulty of proving it is so great"*
  Source Link: https://supreme.justia.com/cases/federal/us/435/247/

- **3) Consolidated Rail Corporation v. Gottshall**, 512 U.S. 532 (1994): The Supreme Court explicitly defined and validated psychological injuries under the common law as independent grounds for liability when caused by an opposing party, stating verbatim: *"mental or emotional harm (such as fright or anxiety) that is caused by another's negligence and that is not directly brought about by a physical injury"*
  Source Link: https://supreme.justia.com/cases/federal/us/512/532/

- **4) Snyder v. Phelps**, 562 U.S. 443 (2011): The Supreme Court confirmed that tort claims for severe mental distress are standard vehicles for addressing targeted, non-physical overreach, *state tort claims of intentional infliction of emotional distress, intrusion upon seclusion, and civil conspiracy*
  Source Link: https://supreme.justia.com/cases/federal/us/562/443/

- **5) Atchison, Topeka & Santa Fe Railway Co. v. Buell**, 480 U.S. 557 (1987): The Supreme Court rejected the notion that purely emotional injuries can be summarily dismissed as abstract, ruling that severe mental harm requires detailed factual scrutiny, stating verbatim: *"The question whether purely emotional injury is compensable under the FELA is not necessarily an abstract point of law"* and noting that it *"might require exacting scrutiny of each case's facts"*
  Source Link: https://supreme.justia.com/cases/federal/us/480/557/

19

- **6) Gertz v. Robert Welch, Inc.**, 418 U.S. 323 (1974): The Supreme Court affirmed that the law extends its highest degree of protection to private citizens who have been subjected to sudden, non-voluntary personal and reputational destruction, stating verbatim: "The state interest in compensating

  Page 418 U. S. 324

  injury to the reputation of private individuals is therefore greater than for public officials and public figures."
  Source Link: https://supreme.justia.com/cases/federal/us/418/323/

- **7) United States v. Burke**, 504 U.S. 229 (1992): The Supreme Court affirmed that traditional common-law tort actions inherently command a broad, expansive scope of compensatory adjustments to fully rectify the specific personal harms sustained by the victim, stating verbatim: *"A hallmark of traditional tort liability is the availability of a broad range of damages to compensate the plaintiff for harm sustained"*
  Source Link: https://supreme.justia.com/cases/federal/us/504/229/

## VI. MOTION FOR SANCTIONS & ADDITIONAL EXTRA-JUDICIAL CONDUCT

During the active pendency of this litigation, Apple and its legal counsel executed a bad-faith, retaliatory strike by completely locking Plaintiff's separate Apple Music Artist account. Plaintiff attempted to log into his claimed artist profile, which was tied exclusively to the disputed master email address in this case: saqib.kafeel28@gmail.com.

This targeted music lockout operates entirely outside the scope of the disputed e-book contract. This active artist channel, performing under the moniker "Saqib Ansari", contains a catalog of over 200 unique, original musical tracks distributed via the corporate music agency Too Lost (Verified live profile link: https://music.apple.com/us/artist/saqib-ansari/1111154017; with evidentiary stream data appended as Exhibit D).

This post-filing retaliation directly compromises the integrity of these judicial proceedings. Plaintiff demands that discovery immediately unravel whether this extra-judicial freeze was recommended or directed by Apple's counsel (WilmerHale) or executed internally by Apple Inc. If found to be orchestrated

20

by counsel, Plaintiff requests that this Court issue formal structural sanctions, including the temporary or permanent suspension of defense counsel's practice licenses within this district, alongside heavy financial sanctions levied against Apple Inc.

**Supplemental Operational Record of Post-Filing Retaliation:** Plaintiff explicitly states that Apple Inc. locked his Apple Music account completely **after the litigation started**. When Plaintiff last checked this independent Apple Music account at the **start of April 2026**, the Apple Music artist account was working properly and fully accessible via the master email address **saqib.kafeel28@gmail.com**. This complete access blockade was instituted mid-litigation, creating an immediate need to verify via targeted discovery whether this retaliatory execution occurred upon the direct instructions of Apple's defense counsel or was executed internally by Apple Inc. itself. If discovery reveals that this extra-judicial asset suppression was recommended, orchestrated, or directed by Apple's counsel, Plaintiff requests that counsel's bar licenses to practice within this district be immediately suspended. Furthermore, this deliberate extra-judicial interference with a separate, non-contractual commercial music asset channel satisfies an additional claim for compensatory adjustments in the amount of **$5,000,000** specifically to remedy the destruction and retaliatory lockout of the Apple Music artist account.

To establish that federal courts possess the absolute, unyielding inherent authority to punish bad-faith extra-judicial conduct, to discipline and suspend the bar licenses of attorneys who participate in abusive litigation tactics, and to levy substantial financial penalties to protect the integrity of the administration of justice, Plaintiff relies upon the binding authority of the Supreme Court of the United States. The following exact, verbatim quotations are directly searchable within the official record:

- **1) Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The Supreme Court established that a court's inherent power to sanction bad-faith conduct extends beyond the formal boundaries of the pleadings to reach any extra-judicial behavior that abuses the legal process, stating verbatim: *"the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct"* and confirming that this power extends to: *"the Court has held that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it."*
Source Link: https://supreme.justia.com/cases/federal/us/501/32/

21

- **2) Roadway Express, Inc. v. Piper**, 447 U.S. 752 (1980): The Supreme Court ruled that federal courts hold an intrinsic responsibility to sanction counsel who disrupt litigation integrity or display bad faith during the pendency of a case, *The inherent power of a court to manage its provisions and to protect the integrity of its processes is beyond question.* and noting: *"The power of a court over members of its bar is at least as great as its authority over litigants."*
  Source Link: https://supreme.justia.com/cases/federal/us/447/752/

- **3) Ex parte Wall**, 107 U.S. 265 (1883): The Supreme Court affirmed that courts have the clear, foundational power to suspend or revoke an attorney's license to practice when their conduct compromises professional standards, *The proceeding is in its nature civil, and has for its object the purgation of the bar and the protection of the court and the public* and holding that: *The power to strike from the rolls is inherent in the court itself.*
  Source Link: https://supreme.justia.com/cases/federal/us/107/265/

- **4) Goodyear Tire & Rubber Co. v. Haeger**, 581 U.S. 101 (2017): The Supreme Court confirmed that a court may deploy its inherent authority to command financial compensation against a party that acts in bad faith, *Federal courts possess an inherent power to fashion appropriate sanctions for conduct which abuses the judicial process.* and affirming that this includes: *an assessment of attorney's fees is undoubtedly within a court's inherent power*
  Source Link: https://supreme.justia.com/cases/federal/us/581/101/

- **5) Link v. Wabash Railroad Co.**, 370 U.S. 626 (1962): The Supreme Court established that the authority of a court to manage its affairs and issue sanctions against bad-faith obstruction is necessary to maintain order, stating verbatim: *"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. [Footnote 3] The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion."* and declaring it is: *"governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs"*
  Source Link: https://supreme.justia.com/cases/federal/us/370/626/

- **6) Bradley v. Fisher**, 80 U.S. 335 (1871): The Supreme Court verified that the power to remove, discipline, or suspend an attorney from the bar is an indispensable mechanism for maintaining judicial authority and purity, stating verbatim: *"The power to remove attorneys from the bar is possessed by all courts which have authority to admit attorneys to practice."* and ensuring that: *the admission and removal of attorneys are judicial acts.*
  Source Link: https://supreme.justia.com/cases/federal/us/80/335/

## VII. REQUEST FOR LEAVE TO AMEND AND IMMEDIATE DISCOVERY

Plaintiff respectfully requests leave to amend this complaint to conform to the evidence and the Court's guidance. Given the ongoing nature of the harm—specifically the locking of the Apple Music account and the potential for further deletion of the 3,400+ assets "Vintage Gems"—Plaintiff moves for immediate, limited discovery.

Expedited discovery is necessary to prevent the spoliation of evidence, specifically regarding the internal corporate communications that led to the post-litigation lockout of the Apple Music artist account. Plaintiff requests that this Court bypass standard timelines to allow for immediate document production requests focused strictly on these retaliatory actions.

## VIII. PROPORTIONALITY OF COMPLAINT LENGTH, COMPLIANCE WITH STATUTORY PLEADING STANDARDS, AND THE IMPERMISSIBILITY OF TECHNICAL PROCEDURAL STRIKES

Plaintiff preemptively bars and forecloses any procedural attempts by Defendant's counsel to strike or dismiss this pleading on account of its 31-page structural length. Under **California Code of Civil Procedure § 425.10(a)(1)(Source)**, California is strictly a fact-pleading jurisdiction requiring an explicit, robust statement of the primary facts constituting the underlying causes of action. Furthermore, while the California Rules of Court strictly limit the length of motion briefs under **Rule 3.1113(Source)**, there is absolutely no statutory page limit governing complaints or amended complaints within this jurisdiction. Similarly, under **Federal Rule of Civil Procedure 8(a)(Source)**, a complaint must be evaluated based on the complexity of the commercial misconduct alleged. Because this action exposes an intricate, multi-year ecosystem layout engineered to systematically suppress a 3,400+ asset digital portfolio, a comprehensive factual presentation

is legally indispensable to establish facial plausibility. Defense counsel cannot weaponize arbitrary length thresholds to evade answering for systemic contract breaches and fraudulent business practices on the merits.

Plaintiff explicitly states that the total length of 31 pages—when formatted strictly under standard rules of 28 lines per page and font size 12—is maintained entirely for good cause. This extensive detail is structurally necessary so that Plaintiff can represent a completely clear, transparent, and comprehensive view of the case to this Court. Given the massive scale of the structural economic injury and the platform-wide suppression of a 3,400+ asset portfolio, a brief or superficial pleading would fail to satisfy the heightened requirements of contemporary jurisprudence. Therefore, this layout is presented in good faith, ensuring that the serious statutory violations are fully documented in the direct light of controlling Supreme Court rulings, rendering any technical objections by defense counsel completely groundless.

To ensure that this action is determined solely upon its true merits, and to establish that procedural technicalities or page counts cannot be used as a shield by corporate defendants to escape structural accountability, Plaintiff relies upon the following exact, verbatim Supreme Court rulings that are fully searchable within the official record:

- **1) Ashcroft v. Iqbal**, 556 U.S. 662 (2009): The Supreme Court confirmed that a plaintiff is required to provide comprehensive factual content to establish a plausible claim, making a detailed narrative legally indispensable, stating verbatim: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
  Source Link: https://supreme.justia.com/cases/federal/us/556/662/
- **2) Swierkiewicz v. Sorema N. A.**, 534 U.S. 506 (2002): The Supreme Court held that the simplified pleading standard applies to all civil actions and relies on subsequent discovery rather than initial hyper-technical striking motions to refine the boundaries of a case, stating verbatim: "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."
  Source Link: https://supreme.justia.com/cases/federal/us/534/506/

- **3) Maty v. Grasselli Chemical Co.**, 303 U.S. 197 (1938): The Supreme Court established that pleadings must serve as transparent vehicles for truth and must never be leveraged by defense counsel to construct artificial barriers against a claimant, stating verbatim: "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end."
  Source Link: https://supreme.justia.com/cases/federal/us/303/197/

- **4) Bell Atlantic Corp. v. Twombly**, 550 U.S. 544 (2007): The Supreme Court acknowledged that complex claims inherently require sufficient contextual layout and factual allegations to raise the right to relief above a speculative standard, stating verbatim: "Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"),[Footnote 3] on the assumption that all the allegations in the complaint are true (even if doubtful in fact),."
  Source Link: https://supreme.justia.com/cases/federal/us/550/544/

- **5) Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit**, 507 U.S. 163 (1993): The Supreme Court held that federal courts cannot invent or expand restrictive procedural barriers to weed out claims at the pleading stage outside the plain text of the Federal Rules, stating verbatim: *"In the absence of such an amendment, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."*
  Source Link: https://supreme.justia.com/cases/federal/us/507/163/

- **6) Conley v. Gibson**, 355 U.S. 41 (1957): The Supreme Court long ago rejected the notion that arbitrary technical constraints on how a case is structurally written out should override the fundamental pursuit of notice and justice, stating verbatim: "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."
  Source Link: https://supreme.justia.com/cases/federal/us/355/41/

## IX PLAINTIFF'S REPEATED ATTEMPTS TO RESOLVE MATTER EXTRA-JUDICIALLY & REQUEST FOR LIMITED EXPEDITED DISCOVERY

Prior to seeking the intervention of this Court, Plaintiff engaged in three separate, extensive efforts to resolve this operational dispute amicably and outside the bounds of active litigation. First, for a grueling six-month period preceding the filing of this action, Plaintiff engaged in a continuous email exchange directly with Defendant Apple Inc., repeatedly requesting a specific factual reason for the abrupt deletion of the account and pleading for its administrative restoration. Defendant systematically refused to engage on the merits, delivering nothing but cold, automated boilerplate responses that completely evaded substantive review (all correspondence attached comprehensively as **Exhibit B**).

Following this administrative dead end and the subsequent initiation of this lawsuit, Plaintiff maintained his commitment to judicial economy by sending two separate, strictly confidential settlement communications directly to Apple's legal counsel. These formal settlement overtures provided an explicit framework to conclude this matter immediately, restore the locked asset accounts, and settle the structural economic harm through reasonable, negotiated compensatory damages.

Remarkably, Apple's counsel has exhibited such absolute arrogance that they failed to return a single line of correspondence or acknowledge these good-faith settlement invitations. This absolute silence exposes an intentional, bad-faith strategy designed to unnecessarily drag out these proceedings, waste the precious time and resources of this Court, and deploy abusive procedural maneuvers rather than joining issue on the merits. Rather than answering the clear contract breaches documented in the complaint, Apple's counsel seeks to avoid structural liability entirely through repetitive, stalling motions to dismiss.

To break the arrogance of decades of experience of Apple's counsel—habitual defenders of "money launderers" and "fraudsters" **(Dkt. 38, Section II)**—and to prevent them from exploiting their financial leverage to build further bad-faith delays, Plaintiff respectfully requests that this Court immediately bypass standard scheduling gridlocks and order limited, expedited discovery. This targeted discovery must compel immediate production of the internal logs and administrative instructions regarding the mid-litigation lockout of Plaintiff's independent Apple Music Artist account under the master email address saqib.kafeel28@gmail.com, bringing this case to an immediate, transparent evaluation on the merits.

26

To support this request and demonstrate that the Supreme Court of the United States has long established that such deliberate, bad-faith tactical delays, structural obstruction, and systemic refusals to cooperate are completely intolerable, holding that federal courts possess the absolute inherent authority to discipline entire legal operations or order direct structural suspensions when counsel chooses to abuse the administration of justice, Plaintiff relies upon the following exact, verbatim Supreme Court rulings that are fully searchable within the official record:

- **1) Roadway Express, Inc. v. Piper**, 447 U.S. 752 (1980): The Supreme Court explicitly affirmed that federal courts possess inherent, independent powers to punish bad-faith delays and structured obstruction by counsel, *The inherent power of a court to manage its processes, therefore, includes the ability to do more than simply enter judgment for a party; it includes the power to control admission to its bar and to discipline attorneys who appear before it.*
  Source Link: https://supreme.justia.com/cases/federal/us/447/752/

- **2) Chambers v. NASCO, Inc.**, 501 U.S. 32 (1991): The Supreme Court established that when an entire legal strategy is designed to create delay, frustrate a claimant, and abuse judicial mechanisms, courts have the unyielding authority to levy heavy penalties, *if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' the entire fabric of the fraud can be unraveled* and holding that a court may act when a party has *acted in bad faith, vexatiously, wantonly, or for oppressive reasons*
  Source Link: https://supreme.justia.com/cases/federal/us/501/32/

- **3) National Hockey League v. Metropolitan Hockey Club, Inc.**, 427 U.S. 639 (1976): The Supreme Court declared that when parties choose to delay or reject direct litigation duties, the judiciary must employ absolute deterrence to break that arrogance, stating verbatim: "But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."
  Source Link: https://supreme.justia.com/cases/federal/us/427/639/

27

- **4) Link v. Wabash Railroad Co.**, 370 U.S. 626 (1962): The Supreme Court held that courts do not need to wait for a party to complete its stalling tactics before deploying severe structural adjustments to preserve order, stating verbatim: *"*The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an "inherent power," governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to

- Page 370 U. S. 631

- achieve the orderly and expeditious disposition of cases.*"*
  Source Link: https://supreme.justia.com/cases/federal/us/370/626/

- **5) Ex parte Wall**, 107 U.S. 265 (1883): The Supreme Court confirmed that the power of a court to strike down or strip counsel of their right to appear in a jurisdiction is an intrinsic protective mechanism, *The proceeding is in its nature civil, and has for its object the purgation of the bar and the protection of the court and the public* and validating that *The power to strike from the rolls is inherent in the court itself.*
  Source Link: https://supreme.justia.com/cases/federal/us/107/265/

- **6) Alyeska Pipeline Service Co. v. Wilderness Society**, 421 U.S. 240 (1975): The Supreme Court recognized that federal courts hold an enduring right to punish entities that weaponize financial or administrative scales for oppressive reasons, *inherent power of the court to allow attorneys' fees in particular situations, unless forbidden by Congress, but the exceptions are unquestioned, as where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons*
  Source Link: https://supreme.justia.com/cases/federal/us/421/240/

- **7) Bradley v. Fisher**, 80 U.S. 335 (1871): The Supreme Court confirmed that maintaining the purity of the legal bar against bad-faith actors is a core, unreviewable judicial function, *The power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice* and that this authority is essential for *the preservation of order and decorum in their rooms, and for the enforcement of obedience to their lawful mandates*
  Source Link: https://supreme.justia.com/cases/federal/us/80/335/

28

## X. PRAYER FOR RELIEF

**For the Procedural/Motion Issue:** "Plaintiff respectfully requests that this Court reserve and preserve Plaintiff's right to formalize separate, independent noticed motions pursuant to FRCP 7 and Rule 11 for appropriate sanctions, spoliation remedies, and immediate expedited discovery based on Defendant's mid-litigation extra-judicial conduct detailed herein."

**For the IIED/Damages Issue:** "Plaintiff prays for compensatory, consequential, and special tort damages in an amount to be proven at trial for the severe, non-economic personal harm, profound emotional distress, and disruption of fundamental life liberties proximately caused by Defendant's intentionally tortious, extra-contractual, and predatory course of conduct."

**For the UCL/Market Issue:** "Plaintiff requests permanent injunctive relief enjoining Defendant from engaging in unfair, predatory, and discriminatory platform manipulation, including the bad-faith suppression of independent digital assets to artificially insulate preferred commercial entities from price competition."

**The "Catch-All" Anchor:** "Plaintiff prays for such other, further, alternative, or statutory relief—including equitable restitution and reasonable costs—as this Court deems just, proper, and necessary under the circumstances to remedy Defendant's aggregate violations of law."

WHEREFORE, Plaintiff Saqib Kafeel respectfully requests that this Court enter judgment in his favor and against Apple Inc., granting the following relief:

A. Compensatory, consequential, and punitive damages for Breach of Contract, Conversion, and Tortious Injury in a total amount of **$45,000,000** based upon the replacement value, intrinsic worth of the 3,400+ assets "Vintage Gems" collection, and the systematic destruction of Plaintiff's professional life's work;

B. Restitution, disgorgement of profits, and structural injunctive relief under Cal. Bus. & Prof. Code § 17200 to halt Apple's preferential, high-fee public domain market manipulation;

C. The immediate entry of an order compelling expedited discovery to examine internal communications, algorithmic sorting records, and the precise corporate directives used to execute the post-litigation Apple Music artist lockout;

D. Striking defense pleadings and issuing severe evidentiary and monetary sanctions against Apple Inc. and its counsel for active, bad-faith retaliation during an open lawsuit;

E. A speedy trial on all issues so triable; and

F. Any further relief this Court deems just and proper.

Dated: July 02, 2026
Respectfully submitted,
*/s/ Saqib Kafeel*

**Saqib Kafeel**,
Pro Se Plaintiff
A800 Sector 11-A North Karachi, Karachi, Pakistan 75850
Email: saqib.kafeel25@gmail.com
Phone: +92 312 7941099

30

## XI. DEMAND FOR JURY TRIAL

Plaintiff Saqib Kafeel hereby demands a trial by jury on all issues, claims, and causes of action in this matter so triable under the law.

Dated: July 02, 2026
Respectfully submitted,
*/s/ Saqib Kafeel*

**Saqib Kafeel**,
Pro Se Plaintiff
A800 Sector 11-A North Karachi, Karachi, Pakistan 75850
Email: saqib.kafeel25@gmail.com
Phone: +92 312 7941099

## XII. LIST OF ATTACHED EXHIBITS

**EXHIBIT A:** Copy of the iTunes Book Agreement showing Section 1(q) and Section 13(a).

**EXHIBIT B:** Chronological email logs between Plaintiff and Apple support channels detailing the pre-termination freeze.

**EXHIBIT C:** Evidentiary platform screenshots of the 10 listed high-price public domain books actively promoted by Apple to the exclusion of independent low-cost competitors.

**EXHIBIT D:** Profile documentation, registry details, and metadata tracking the 200+ track catalog of the "Saqib Ansari" Apple Music Artist account tied to saqib.kafeel28@gmail.com.

**EXHIBIT E:** Apple Developer Program License Agreement English

31